Steven L. GILLETTE, Appellant–
Respondent,

v.

Karin D. GILLETTE, Appellee–
Petitioner.

No. 02A03–0409–CV–424.

Court of Appeals of Indiana.

Oct. 13, 2005.

Perry D. Shilts, Haller & Colvin, Fort Wayne, IN, Attorney for Appellant.

Cathleen M. Shrader, Daniel M. Graly, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Steven L. Gillette appeals the denial of his motion for summary judgment, arguing that a prenuptial agreement (Agreement) that he executed with his former wife, appellee-petitioner Karin D. Gillette, was not applicable in the dissolution proceedings. Specifically, Steven alleges that the trial court should have determined as a matter of law that the Agreement did not exclude certain assets from the marital estate. Karin cross-appeals, claiming that the trial court erred in ordering her to pay a portion of Steven's attorney's fees. Concluding that the trial court properly denied Steven's motion for summary judgment and also determining that the attorney fee award was proper, we affirm the judgment of the trial court.

*FACTS*

Karin and Steven were married on June 9, 1990, and two children were born to the marriage. Approximately three weeks before the marriage, the parties executed the Agreement. Karin had consulted with her legal counsel, Paul Steigmeyer, and informed him that she wanted to preserve her property free from any claims that her potential spouse might have. As a result, Steigmeyer met with Karin and Steven and informed them that the proposed Agreement he drafted would apply in the event of either divorce or death.

While the Agreement did not specifically mention "divorce" or "dissolution," both Karin and Steven agreed that all property owned by a particular spouse that was brought into the marriage would remain his or her individual property, free of any claims that the other might have. The Agreement provided, in pertinent part, as follows:

> [I]t is the desire of each of the parties hereto that all property now owned by each of them remain the separate property of each, so that each is free to devise and bequeath such properties to whomever they so desire, free of any claims of the other party, and, further, the desire of the parties that any properties hereafter acquired, including all income and increments upon assets and claims of which each is presently possessed, shall, likewise, pass as they each desire, free of claim of the other that may arise by reasons of the parties' contemplated marriage, including any rights which each might have to any property of the other by virtue of Indiana intestacy statutes, Indiana statutes which grant allowances to surviving spouses, and statutes of like or similar nature in the State of Indiana or in any other jurisdiction in which the parties might hereafter take up residence.

Appellant's App. at 76–77. The Agreement further stated:

> 1. *Property to be Separately Owned.* After the solemnization of the marriage between the parties, each of the parties shall separately retain all rights in his or her own property, whether now owned or hereafter acquired, and each of them shall have the absolute and unrestricted right to dispose of such separate property free of any claim that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them.

> 2. *Subsequent Acquisition of Property.* Entry of the parties into this Agreement in no way precludes the parties from making gifts to each other, from designating the other as beneficiary upon any policies of insurance, from bequeathing or devising property under will to the other, or from hereafter acquiring and titling property in the joint names of the parties with rights of survivorship in the other, each of the parties declaring, however, that there has been no promise or agreement of either of the parties hereto that the other will hereafter give property to the other, leave property to the other under a will, or by beneficiary designation upon insurance policies or by joint titling of assets with rights of survivorship in the other. It is hereby declared and intended that any assets as might be acquired hereafter by the parties in joint tenancy with rights of survivorship in the survivor of the two of them, will pass, in the event of death of either of the parties, to the surviving spouse.

> 3. *Waiver of Rights.* Each of the parties hereby waives, relinquishes, renounces and releases all property rights, all rights as surviving spouse, heir, distributee, survivor or next of kin, wheth-

er by common law or by statute, state or federal, now in effect or hereinafter enacted in any jurisdiction, all claims and interest, whether inchoate or otherwise, including the right to elect against the will, statutory widow or widower's allowance and statutory widow or widower's family allowance, in or to the property, real, personal, intangible or mixed. Each party shall on demand of the other party or his or her heirs, devisees, administrators, executors or assigns execute any and all releases, deeds, instruments, receipts and other documents that may be necessary to accomplish the foregoing. This provision shall constitute a waiver and release of the right of election which either spouse might have by reasons of the laws of the State of Michigan [sic], or like or similar laws of any other jurisdiction, as such laws might from time to time hereafter be amended.

4. *Necessary Documents.* Each party shall, upon the request of the other, execute, acknowledge and deliver any instrument appropriate and necessary to effectuate the intentions and provisions of this Agreement.

Appellant's App. p. 176–78. When the parties signed the Agreement on May 22, 1990, it was determined that Karin came into the marriage with assets totaling nearly $920,000 and liabilities of $20,000. Karin was previously married, and her former husband had been killed in an automobile accident. Sometime after his death, Karin received funds from a wrongful death lawsuit, insurance proceeds, and a share of his assets in the total amount of $711,454.92. On the other hand, Steven's assets totaled $58,200 with liabilities in the amount of $9,000.

After the children were born, Karin stayed at home to raise them, and Steven was the sole wage earner. However, Karin was employed as a schoolteacher for a significant portion of the parties' marriage. Karin worked outside of the home on a limited basis between 1991 and 1995, and earned an average of $38,000 per year from her employment as a teacher between 1999 and 2002. When Karin was not working, Steven made the mortgage payments on some real estate in Kendallville that Karin owned in her own name. He worked as a purchaser for various companies and earned approximately $65,000 in 2002. Steven's "peak" earning years were 1999 and 2000, when his wages amounted to nearly $80,000 per year. Inasmuch as Steven thought it unfair that he was paying the mortgage on land that was solely Karin's name, he requested that Karin title the property in both of their names. As a result, Karin conveyed the land to the both of them as tenants by the entireties on August 6, 1993.

Thereafter, on June 30, 1994, Karin filed a petition for dissolution of marriage. Moreover, she demanded that Steven execute the necessary documents to preserve her sole ownership in the Kendallville property. Steven agreed to do this upon Karin's repayment to Steven of all of the amounts that he paid toward the mortgage. The property was ultimately reconveyed to Karin in her name only on August 26, 1994.

Although the parties reconciled for a period of time, Karin again filed for divorce on October 25, 2002. The trial court held a provisional hearing determining, among other things, that

[T]he parties have had a long-standing marriage of twelve (12) years and that the Solomon [sic] Smith Barney account held [in] the name of the Petitioner is a marital asset subject to division. In light of both parties needing financial liquidity on a provisional basis, the Court hereby Orders that [10%] of the

value of said account shall be partially divided and provided to Respondent in cash or in kind with fifteen [15] working days of the date of this Order, with the purpose being to provide the Respondent with financial liquidity.

Appellant's App. p. 58. Pursuant to this order that was entered on March 4, 2003, Steven received $26,003 from this account. On March 27, 2003, Karin filed a Motion for Relief from this order regarding the determination that the Smith Barney Account was a marital asset that could be divided. She then filed a notice of appeal from this order, and on May 21, 2003, the trial court entered an order modifying its order of March 4, 2003, making it clear that the court's reference to the Smith Barney account was not to be construed as a determination as to the validity or invalidity of the parties' Agreement. Thereafter, Karin dismissed her appeal.

On June 19, 2003, Steven filed a motion for summary judgment on the issue of whether the Agreement applied to the division of assets in the event of a divorce. Following a hearing, the trial court denied Steven's motion. It was determined that the Agreement was not ambiguous and that its meaning could be discerned from the four corners of the document. In its order, the trial court pointed to the following language of the Agreement: "Whereas it is the desire of each of the parties hereto that all property now owned by each of them remain the separate property of each." Appellant's App. p. 25. The trial court also observed that pursuant to paragraph one of the Agreement, it was clear that each spouse was to retain all rights in his or her separate property after the parties' marriage. Thus, the trial court determined that the Agreement was enforceable with respect to the dissolution proceedings.

On August 5, 2003, Karin demanded that Steven release his claims to her separate property and to any property that was traceable to Karin's premarital property. However, Steven refused to execute the release. After a final hearing that concluded on April 27, 2004, the trial court found that Steven earned approximately $62,500 per year, that he would retain his separate property valued at $123,978, and that he was entitled to a portion of $119,992.50, which represented the remaining property of the marital estate that should be divided. The trial court also observed that Karin suffers from multiple sclerosis, "has difficulty walking, especially climbing stairs, and problems with frequent urination." Appellant's App. p. 167. The trial court also found that Karin's annual income was approximately $46,000, that she would retain her separate property in the amount of $829,039.50, and that she would receive a share of the $119,992.50 that remained. In the end, the trial court ordered the remaining marital property to be divided equally between Steven and Karin.

As for attorney's fees, the trial court found that Karin had incurred fees in the amount of $62,734.32 to attorney Daniel M. Graly and $31,014.50 to Barrett & McNagny for services involved in an interlocutory appeal that she initiated. Karin sought reimbursement for appellate attorney's fees that she expended, claiming that Steven had failed to cooperate with the determination that the Smith Barney Account was not subject to division because it was separate property.

Steven incurred attorney's fees in the amount of $38,736.59. He contended that Karin should pay those fees because a custody dispute involving the children should have been resolved at an earlier time and because Karin had more assets.

With respect to this contention, the trial court determined as follows:

99. Pursuant to the Court's order of March 4, 2003, Respondent received a payment in the amount of [$26,003] from Petitioner's Smith Barney account. At the time of the Final Hearing Respondent had [$5,899] remaining out of the [$26,003]. Respondent used [$15,921.88] for attorney fees and litigation expenses in this matter, and [$4,182.12] for personal expenses and obligations.

100. The Court finds that the [$26,003] paid by Petitioner to Respondent should be treated as payment of attorney fees by Petitioner on behalf of Respondent. . . .

Appellant's App. p. 40–41.

Karin then filed a motion to correct error, alleging that the trial court had made a scrivener's error in valuing a lake home at $490,000, rather than $409,000, and that the $81,000 error was carried forward to artificially inflate the value of her property. Karin also challenged the determination that the order of March 4, 2003, that granted Steven $26,003—ten percent of Karin's Smith Barney account— should be "treated as payment of attorney fees by [Karin] on behalf of [Steven]." Appellant's App. p. 169.

Thereafter, the Magistrate of the trial court entered an order correcting the prior findings and judgment by determining that the value of the lake home was $409,000, and reducing the amount of Karin's separate property by $84,000 to $748,039.50. Steven now appeals, and Karin cross-appeals.

### DISCUSSION AND DECISION

*I. Summary Judgment—Applicability of the Agreement*

■ Steven alleges that the trial court erred in determining that the Agreement

protected each party's separate assets from claims that could be asserted by the other. In essence, Steven maintains that the Agreement should not apply in these circumstances because it did not contain the words "divorce" or "dissolution."

In addressing these contentions, we first note that when reviewing the grant or denial of summary judgment, this court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). Specifically, we must determine whether there is a genuine issue of material fact requiring a trial and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.; see also* Ind. Trial Rule 56(C), (H). A party seeking summary judgment must make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills*, 765 N.E.2d 698, 701 (Ind.Ct.App.2002), *trans. denied.*

■ Next, we observe that when construing a premarital agreement, it must be determined whether the parties' intent is expressed in the language of the contract. To be sure, the court must read all of the contractual provisions as a whole to accept

an interpretation that harmonizes the contract's words and phrases and gives effect to the parties' intentions that are expressed in the language of the contract. *Schmidt v. Schmidt,* 812 N.E.2d 1074, 1080 (Ind.Ct.App.2004). Additionally, it has been held that

> contract construction is a question of law for the court. The primary and overriding purpose of contract law is to ascertain and give effect to the intentions of the parties. If the intention of the parties can be gleaned from their written expression, that intention must be effectuated by the court. The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or even paragraphs read alone.

*Eck & Assoc., Inc. v. Alusuisse Flexible Packaging, Inc.,* 700 N.E.2d 1163, 1167 (Ind.Ct.App.1998), *trans. denied.*

In examining the language of the Agreement here, it is apparent that Steven requests that a provision must be read into the Agreement that specifically exempts divorce. However, contrary to such an assertion, the Agreement made it clear that Steven and Karin would separately retain all rights in their separate property and would continue to have the "absolute and unrestricted right to dispose of such separate property *free of any claim of the other that may arise by reasons of the parties' contemplated marriage.*" Appellant's App. p. 76–77 (emphasis added).

Notwithstanding this language, Steven relies on this court's opinion in *Bressler v. Bressler,* 601 N.E.2d 392 (Ind.Ct.App. 1992), for the proposition that the trial court erred in applying the Agreement to their dissolution matter. In *Bressler,* the agreement executed by the parties related *only* to the husband's property, stating that his property would not be subject to

the rights of inheritance of his wife or subject to the laws of descent and distribution. Quoting from the agreement:

> Husband and wife intend to marry each other soon, and it is agreed upon between the parties that after such marriage all the properties of any name or nature, real, personal or mixed, wherever they may be found, belonging to husband before marriage shall be considered property not subject to the rights of inheritance of his wife or subject to the laws of descent and distribution, and that this shall include all interest, rents, stocks, bonds, certificates of deposit, other like investments, savings accounts, checking account, which in time accrue or result in any manner from any increase in value of said assets owned by the husband on the attached Schedule A prior to his marriage or to be collected for the use of the same in any way, which property shall remain forever his personal estate.

Record, at 81. Absent from this agreement were the statements contained in Steven and Karin's Agreement that were not tied to matters relating to the parties' estate plans. In particular, a portion of the Agreement here provided that

> [E]ach of the parties shall separately retain all rights in his or her own property, whether now owned or hereafter acquired, and each of them shall have the absolute and unrestricted right to dispose of such separate property free of any claim that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them.

Appellant's App. p. 77. In light of this section of the Agreement, Steven attempts to minimize the reference to "all property rights" by claiming that this language refers only to the property rights that pertain to the death of a spouse. Again, when construing the Agreement as a whole, we

find that there is nothing limiting the parties' rights to hold and retain all rights to their separate property. Hence, we reject Steven's claim that he acquired the right to take a share of Karin's separate property by virtue of their marriage. As a result, we conclude that the trial court properly denied Steven's motion for summary judgment.

■ The Agreement notwithstanding, we also set forth the provisions of Indiana Code section 31–15–7–4(a):

In an action for dissolution of marriage, the trial court shall divide the property of the parties, regardless of whether it was:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

(A) after the marriage; and

(B) before final separation of the parties; or

(3) acquired by their joint efforts.

■ A companion statute, Indiana Code section 31–15–7–5, provides for the presumption that an equal division of the marital property between the parties is just and reasonable. In construing these statutes, it has been held that all property of the parties must be included in the marital estate regardless of its source but " 'the trial court may deviate from the 50–50 statutory presumption if property was brought separately into the marriage, was never commingled with other marital assets, and was never treated as marital assets.' " *Fobar v. Vonderahe,* 771 N.E.2d 57, 59 (Ind.2002) (quoting *Castaneda v. Castaneda,* 615 N.E.2d 467, 470 (Ind.Ct. App.1993)). That is, the trial court may choose to distribute the marital property unequally in favor of one spouse based upon various statutory considerations.[1] By the same token, "[w]hether to do so is a matter of trial court discretion in light of all other relevant factors." *Fobar,* 771 N.E.2d at 59.

Here—as evidenced by the findings—the trial court provided a thorough analysis of the circumstances in this case when it determined the manner in which to divide the marital assets. In essence, it is apparent that the trial court considered the factors set forth in Indiana Code section 31–15–7–5, and ultimately decided to leave Steven and Karin with the property that they had individually brought into the marriage. The trial court then equally divided the remainder of the property that had been accumulated after the marriage. Hence, because the trial court could have exercised its discretion in these circumstances to set over the property to Steven and Karin that they each owned at the

---

1. Indiana Code section 31–15–7–5, cited above, states that the presumption regarding equal distribution of the property may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

time of the marriage, we conclude that Steven's argument fails on this basis as well.

## II. Karin's Cross–Appeal—Attorney's Fees

■ Karin brings a cross-appeal, arguing that the trial court abused its discretion in ordering her to pay a portion of Steven's attorney's fees. Specifically, Karin argues that the trial court erred in allowing Steven to retain 10% of Karin's Smith Barney account as reflected in its order of March 4, 2003, which served as the payment of the attorney's fees.

■ We first note that a trial court may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding in connection with marriage dissolution proceedings. Ind.Code § 31–15–10–1. In determining a reasonable attorney fee award in such proceedings, the trial court should consider the spouses' respective resources, economic condition, ability to engage in gainful employment and earn an adequate income, and other such factors that bear on the reasonableness of an award. *MacIntosh v. MacIntosh,* 749 N.E.2d 626, 632 (Ind.Ct.App.2001), *trans. denied.* As this court observed in *Mason v. Mason,* 775 N.E.2d 706, 711 (Ind.Ct. App.2002), *trans. denied:*

> In reviewing a trial court's award of attorney's fees, we apply an abuse of discretion standard. *Baker v. Baker,* 488 N.E.2d 361, 364 (Ind.Ct.App.1986). A trial court has wide discretion in awarding attorney's fees. *Selke v. Selke,* 600 N.E.2d 100, 102 (Ind.1992). We will reverse such an award only if the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The trial court may look at the responsibility of the parties in incurring the attorney's fees. *Hanson v. Spolnik,* 685 N.E.2d 71, 80 (Ind.Ct.App.1997). Fur-

thermore, the trial judge possesses personal expertise that he or she may use when determining reasonable attorney's fees. *Bower v. Bower,* 697 N.E.2d 110, 115 (Ind.Ct.App.1998).

As set forth in the discussion above, the trial court here identified the parties' separate property, which included approximately $272,000 in Karin's Smith Barney account. The evidence showed—and the trial court found—that Steven had no liquid assets with respect to the marital property that he was awarded or with regard to any of his separate property. Although Steven was awarded the former marital residence with a fair market value of $273,400, it was subject to a mortgage in the amount of $186,240. The nearly $87,000 in equity was given subject to a property equalization judgment in favor of Karin for $28,917.25. Hence, the equity amount was reduced to nearly $56,000. Appellee's Br. p. 62.

Even when considering the trial court's award of attorney's fees, Karin's financial benefit in the end far exceeded that of Steven. The record demonstrates that the trial court entered numerous findings in this case that included complex, thorough rationales and analyses that related to a number of issues. Appellant's Br. p. 44–63. It is also apparent that the trial court did, indeed, consider Steven and Karin's financial resources, assets, income, and economic conditions when making the award of attorney's fees. As a result, we reject Karin's argument that the trial court abused its discretion with respect to the order on attorney's fees.

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.