David J. MITCHELL, Appellant–Respondent, Cross–Appellee,

v.

Alicia MITCHELL n/k/a Alicia Zamarron, Appellee–Petitioner, Cross–Appellant.

No. 64A03–0703–CV–122.

Court of Appeals of Indiana.

Oct. 23, 2007.

Jeff Shaw, Valparaiso, IN, Attorney for Appellant.

George R. Livarchik, Livarchik & Farahmand, Chesterton, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

David Mitchell appeals the trial court's adjustment of his spousal maintenance

payments. Alicia Mitchell–Zamarron cross-appeals the trial court's reduction of spousal maintenance and assessment of attorney fees. We affirm the trial court as to all issues.

### Issues

David raises one issue, and Alicia raises two issues on cross-appeal. Combined, reordered, and restated, the issues before us are:

I. whether the trial court abused its discretion in reducing David's spousal maintenance from $400 per month to $250 per month; and

II. whether the trial court abused its discretion in ordering David to pay only $1,500 of Alicia's attorney fees.[1]

### Facts

David and Alicia married in September of 1994. They did not have any children together and divorced on April 14, 2004. Alicia suffered from a variety of neck, back, and mental problems and did not work. The trial court in the divorce proceeding ruled that Alicia was so physically or mentally incapacitated that her ability to support herself was materially affected and awarded spousal maintenance on that basis. The trial court ordered David to pay $400 per month in permanent spousal maintenance and pay approximately $315 per month to maintain insurance coverage for Alicia through the COBRA system.

Later that year David began receiving statements from his insurance company that referenced Alicia's status as a Medicare recipient. Until that point, he was unaware that Alicia had sought out or been granted Medicare benefits. Alicia also applied for and began receiving $650 in monthly social security disability benefits

without David's knowledge. This amount eventually was increased to $703 per month. In addition to the monthly payments, the Social Security Administration issued a $21,000 lump sum award to Alicia. She also received a $55,000 settlement based on a personal injury action.

David filed a Motion to Modify Dissolution Decree on January 5, 2006, contending that the spousal maintenance provisions and medical insurance payments should be eliminated. Alicia filed a Rule to Show Cause on June 27, 2006, contending that David violated the dissolution decree by delaying to prepare a Qualified Domestic Relations Order ("QDRO") regarding the division of his 401(k) and failing to pay for continued health insurance coverage.

The trial court found that there was a substantial and continuing change in Alicia's resources and reduced the spousal maintenance to $250 per month and eliminated David's payments for Alicia's medical insurance. The trial court also ordered David to pay $1,500 of Alicia's attorney fees to compensate for legal expenses resulting from his failure to complete the QDRO in a timely fashion.

This appeal and cross-appeal followed.

### Analysis

When, as here, the trial court issues findings of fact and conclusions of law, we will not set aside the court's findings unless they are clearly erroneous. *In re Marriage of Erwin,* 840 N.E.2d 385, 389 (Ind.Ct.App.2006). We are to determine whether the evidence supports the findings and the findings support the judgment. *Id.* In reviewing the trial court's findings, we are not to reweigh the evidence or reassess the credibility of witnesses. *Id.* Rather, a trial court's findings of fact will only be found clearly erroneous when the rec-

---

1. Alicia also included an argument that the trial court abused its discretion in not ordering David to continue to pay her COBRA benefits, but has withdrawn this issue.

ord is without any evidence or reasonable inferences to support them. *Id.*

### I. Spousal Maintenance

■ David brought this appeal contending that the trial court did not go far enough in reducing his monthly spousal maintenance from $400 to $250, and he argues the spousal maintenance should be totally eliminated. Alicia cross-appeals on this issue, contending that the circumstances did not warrant a reduction in spousal maintenance and the trial court abused its discretion in making such a reduction.

■ A trial court has broad discretion to modify a spousal maintenance award, and we will reverse only upon an abuse of that discretion. *Erwin,* 840 N.E.2d at 389. An abuse of discretion will be found if the trial court's decision is clearly against the logic and effect of the facts or reasonable inferences to be drawn therefrom, if the trial court misinterprets the law, or if the trial disregards evidence of factors in the controlling statute. *Lowes v. Lowes,* 650 N.E.2d 1171, 1174 (Ind.Ct.App.1995).

Indiana Code Section 31–15–7–2(1) controls spousal maintenance and provides: "If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court." A modification to the maintenance provisions may be ordered only "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Ind.Code. § 31–15–7–3.

■ The trial court considers the factors underlying the original maintenance award in determining whether a substantial change in circumstances occurred, which are: the financial resources of the party seeking to continue maintenance, the standard of living established in the marriage, the duration of the marriage, and the ability of the spouse paying maintenance to meet his or her own needs. *Lowes,* 650 N.E.2d at 1174.

The trial court's relevant findings and conclusions regarding the modification of David's maintenance of Alicia are:

9. Since the decree of April 2004, the wife now receives $703.00 per month from the Social Security Administration which granted her application for disability benefits awarded in May of 2005; she also receives a monthly stipend from the Pension Benefit Guaranty Corporation in the approximate amount of $292.00. (The Court awarded the wife 65% of the vest coverture value of all aspects of husband's pension. The coverture percentage is 26.7% (Decree Paragraph 11, page 16)[) ]; and she receives $400.00 per month spousal maintenance. Total monthly income is $1,395.00.

10. The Decree of April 2004 awarded wife (65% equity in the marital residence) $97,500.00 in a lump sum payment; wife was awarded her pension and 401(K), together with husband's 401(K) in the amount of $18,445.19 plus any gains or losses thereon. Wife testified that this amount was about $22,000.00. Wife received a lump sum payment from Social Security in the amount of $21,000.00, and a personal injury award in the amount of $55,000.00.

\* \* \* \* \* \*

17. The Court finds there has been a substantial and continuing change in circumstances in that the wife's resources and income has [sic] significantly in-

creased which makes the Decree unreasonable.

\* \* \* \* \* \*

19. The Court finds that the Decree should be modified, as to spousal maintenance, and husband shall pay to the wife the sum of $250.00 per month beginning January 10, 2007 and a like sum the 1st of each month thereafter until further Order of the Court. The husband is no longer required to pay for the wife's medical insurance. The Court declines to make this Order retroactive to the date of the petition.

Appellant's App. pp. 34–36.

The evidence before the trial court illustrated that Alicia's financial situation had changed. She collected an additional $703 per month beginning on or about August of 2005. This change was not temporary—it is a permanent and definite disbursement from the federal government. Alicia also received two lump sum awards, $21,000 from the Social Security Administration and $55,000 from a personal injury lawsuit. The remaining factors for assessment—the duration of the marriage, the standard of living during the marriage, and the other spouse's ability to meet his or her own needs did not change between the time of the original decree and the modification hearing.

Alicia makes much of the fact that David's income increased and therefore her spousal support should increase or at least stay the same. The trial court described any fluctuations or increase in David's income as trivial. David's testimony explained that his income would fluctuate based on the availability of overtime hours and overtime compensation. The spousal maintenance statute focuses on the receiving spouse's ability to support himself or herself. Here, Alicia's monthly income, and therefore her ability to support herself, increased substantially while David's ability to meet his own needs did not change.

■ David contends that Alicia's receipt of social security disability funds should eliminate his duty to provide spousal maintenance. No Indiana case has addressed whether or not spousal maintenance should be eliminated completely when the receiving spouse garners a government disability award. All words in a statute must be given their plain and ordinary meaning, but it is "just as important to recognize what the statute does not say as it is to recognize what it does say." *Vasquez v. Phillips*, 843 N.E.2d 61, 63 (Ind.Ct. App.2006). Presumably, the legislature was aware that incapacitated spouses could be eligible for additional governmental aid and did not provide a statute that automatically excused or eliminated spousal maintenance in that circumstance.

David also argues that spousal maintenance is no longer necessary because Alicia is living with an adult daughter who contributes to some monthly expenses. Testimony regarding this living arrangement, however, did not reveal that the situation was permanent or that the contributions of the daughter were substantial. We find that the trial court's reduction, rather than elimination, of David's spousal maintenance payments was not an abuse of discretion.

## II. Attorney Fees

■ Alicia contends on cross-appeal that the trial court abused its discretion in ordering David to pay only $1,500 of her attorney's fees for his delay in the preparation of the QDRO. Alicia contends she is entitled to her attorney's entire fee of $4,335.00.

■ Indiana Code Section 31–15–10–1 provides that a trial court can order one spouse to pay a reasonable amount for the

cost of the other spouse's maintaining or defending proceedings related to dissolution. We apply the abuse of discretion standard in reviewing such an award. *Gillette v. Gillette*, 835 N.E.2d 556, 561 (Ind. Ct.App.2005). The trial court has wide discretion in awarding attorney fees and may look at the responsibility of the parties in incurring the fees. *Id.* The trial court should consider the spouses' resources, economic condition, ability to earn income, and other similar factors that would bear on the reasonableness of the award. *Id.*

The trial court issued the following findings and conclusions regarding the attorney fees issue:

> 20. The husband shall pay to the wife's attorney, George R. Livarchik, 424 Broadway, Chesterton, Indiana the sum of $1,500.00 within 30 days of the date of this Order for the husband's agreed failure to complete the QDRO as Ordered by the Court.
>
> 21. Both parties are responsible for their own attorney fees as to the modification and contempt proceedings.

Appellant's App. p. 36.

The preparation of the QDRO was necessary for Alicia to begin receiving her share of David's 401(k). The original dissolution decree of April 14, 2004, provided that David's attorney was to prepare and file QDRO dividing his 401(k) into two separate accounts, with approximately $18,445 payable to Alicia. The record indicates that David had at least three different attorneys during the divorce litigation, and David admitted to not having any of his attorneys to attend to this detail.

As a result, Alicia incurred legal expense when her attorney prepared and executed the QDRO. It appears the trial court assessed the reasonable fees incurred regarding the QDRO issue and assigned those to David. A review of the proposed invoice from Alicia's attorney reveals approximately $2,000 in fees incurred during the time her attorney was dealing with the QDRO issue. The invoice also included entries, however, for meetings with the client and review of the 401(k) documents, presumably events that would have had to occur regardless of any neglect by David. The trial court "possesses personal expertise that he or she may use when determining reasonable attorney's fees" and had wide discretion apportion the fees. *Gillette*, 835 N.E.2d at 561.

To the extent that Alicia contends she is entitled to the total attorney's fees incurred, we disagree. Alicia neglected to inform David of her receipt of social security disability benefits and Medicare, and as such she is responsible for a portion of the fees incurred in the modification proceedings. The trial court was free to assign responsibility for part of her own attorney fees to Alicia. "[M]isconduct that directly results in additional litigation expenses may be properly taken into account in the trial court's decision to award attorney's fees." *Hanson v. Spolnik*, 685 N.E.2d 71, 80 (Ind.Ct.App.1997), *trans. denied.* It was not an abuse of discretion for the trial court to apportion only $1,500, or almost one-third, of Alicia's attorney fees to David.

### Conclusion

It was not an abuse of discretion for the trial court to reduce David's responsibility for spousal maintenance to $250 per month and to assign $1,500 of Alicia's attorney's fees to David. We affirm the trial court on all issues.

Affirmed.

KIRSCH, J., and ROBB, J., concur.