## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 14 2015, 8:07 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jane G. Cotton
Anderson, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian A. Reeve, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Paula B. Reeve, <br> *Appellee-Respondent.* | July 14, 2015 <br><br> Court of Appeals Case No. 29A02-1410-DR-738 <br><br> Appeal from the Hamilton Superior Court. <br> The Honorable Daniel J. Pfleging, Judge. <br> Cause No. 29D02-1205-DR-6815 |

**Garrard, Senior Judge**

[1]   Brian A. Reeve appeals the trial court's decree dissolving his marriage with Paula B. Reeve.[1]  We affirm.

---

[1] The trial court's decree of dissolution of marriage restored Paula's maiden name of Haston.  We use the caption that the parties have included on their briefs.

[2] Brian and Paula married in 2007. They each had children from previous relationships. Brian's daughter was a minor, and Paula's two children were adults. Prior to the marriage, Brian and Paula sold their houses and obtained a house (the marital home) together for $502,000. Paula works as a real estate appraiser, and her employer participated in the sale. As a result, Brian and Paula did not have to pay a realtor's commission, which would have cost approximately $30,000. Tr. p. 110.

[3] Brian put a $47,138.58 down payment on the marital home using the proceeds from the sale of his previous house. He titled the home in his name alone. Paula asked Brian to put her name on the house's title, but he declined. Paula gave Brian money from time to time in an attempt to contribute to the mortgage, but her payments were limited and sporadic due to financial challenges resulting from her previous marriage. Brian was aware before he married Paula that she was in difficult financial circumstances. *Id.* at 109.

[4] During the marriage, Brian and Paula worked full time. In addition, Paula maintained the house and the yard. Brian provided health insurance for himself, Paula, and Paula's daughter, as well as for his own daughter in 2007 and 2008. Per Brian's wishes, Brian and Paula maintained separate bank accounts.

[5] The parties separated from May 2010 to March 2011. Paula moved out of the marital home during that time. Within a few days of Paula moving out, Brian transferred $30,000 from a money market account into a fund operated by Lord

Abbott Funds. The parties later reconciled, but they separated again for the final time in April 2012. Brian rented space in the home to an acquaintance for five months after Paula left. The acquaintance paid Brian $750 per month.

[6] On May 9, 2012, Brian filed a petition for dissolution of marriage. Paula filed a counter-petition. On July 31, 2012, the trial court issued a provisional order barring either party from disposing of marital property without court permission. The entry further stated that the parties agreed that the marital house would be listed for sale. The court also ordered the parties not to cancel any health insurance policies. Both parties signed the court's order.

[7] Brian sold the marital home on August 19, 2013. On August 26, 2013, Brian's employer cut his salary from $178,500 to $71,400, reduced his work week to two days, and eliminated his health insurance. His employer agreed to pay him additional money in each paycheck to defray the costs of insurance coverage through COBRA.

[8] On October 1, 2013, Brian filed with the trial court a motion to relieve him of any responsibility to provide health insurance for Paula and her daughter, explaining that his insurer had terminated his insurance coverage. On October 2, 2013, Paula underwent a medical examination that ultimately cost her $3,720. Paula's counsel notified Paula of Brian's motion to drop her from insurance coverage by email on October 2. Paula did not see the email until after the examination was over. That was the first time she was made aware that her medical insurance had been terminated in August.

[9] The trial court scheduled a hearing on Brian's motion to drop insurance coverage for Paula. On October 18, 2013, Brian filed a request to vacate the hearing. He informed the court that he and Paula had agreed that he would pay Paula $200 per month during October, November, and December of 2013 to allow Paula to obtain her own health insurance. Brian submitted a proposed order vacating the hearing and reflecting the parties' agreement, but a magistrate refused to approve the order because it was not signed by both parties. The court signed the parties' agreement on January 8, 2014. Brian did not pay Paula the $200 per month.

[10] On January 10, 2014 and March 27, 2014, the trial court held evidentiary hearings on the parties' cross-petitions to dissolve the marriage. On July 18, 2014, the court issued its decree of dissolution of marriage, accompanied by findings of fact and conclusions of law. Specific terms will be discussed below, but the court stated that it was equally dividing the marital estate's assets and liabilities. The court also ordered Brian to pay Paula's medical bill of $3,720.00 for her October 2, 2013 medical examination. Finally, the court directed Brian to pay $2,500 to Paula for a portion of her attorney's fees.

[11] On August 18, 2014, Brian filed a motion to correct error. Paula requested an extension of time to respond. Brian objected, and Paula tendered her response on September 12, 2014. Brian moved to strike her response. On September 22, 2014, the trial court permitted Paula to file her response and denied Brian's motion to correct error. This appeal followed.

Brian raises four issues, which we expand and restate as:

I.      Whether the trial court erred in denying Brian's motion to strike Paula's response to Brian's motion to correct error.

II.     Whether the trial court erred in ordering Brian to pay Paula for medical expenses she incurred after Brian filed his petition for dissolution of the marriage.

III.    Whether the trial court abused its discretion in the course of identifying and dividing the marital estate.

IV.    Whether the trial court abused its discretion in ordering Brian to pay part of Paula's attorney's fees.

V.     Whether Brian is entitled to appellate attorney's fees.[2]

On cross-appeal, Paula also requests an award of appellate attorney's fees.

# I. Response to Motion to Correct Error

Brian argues that the trial court erred in permitting Paula to belatedly file her response to his motion to correct error. He asks the Court to strike Paula's response from the record on appeal.

Indiana Trial Rule 59(E) states that a response to a motion to correct error must be filed within fifteen days after service of the motion. Trial Rule 6(B)(2) provides that a trial court may not extend the filing deadline for a "statement in opposition to correct error under Rule 59(E)." Thus, Brian appears to be correct that the trial court lacked discretion to extend Paula's deadline to file

---

[2] In his Appellant's Brief, Brian asks this Court to strike Paula's Appellee's Brief in whole or in part, claiming that it fails to substantially comply with the Rules of Appellate Procedure. We deny Brian's motion.

her response to his motion to correct error. However, Appellate Rule 66(A) provides:

> No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

There is no indication in the record that Paula's belated response to Brian's motion to correct error had any influence on the trial court's denial of the motion. In the order denying the motion to correct error, the court did not cite Paula's response but instead indicated that it had reviewed "the Court file" and the evidence presented. Appellant's App. p. 21. In light of all of the evidence that the parties submitted, the probable impact of Paula's response was minor. We decline to strike Paula's response from the record on appeal.

Brian further asks the Court to strike specific pages of Paula's response to his motion to correct error, claiming that those pages contain facts not in evidence and assertions that are unsupported by the record. In support of his claim, he directs this Court to documents he filed with the trial court. A party may not incorporate argument from another source by reference. *Dave's Excavating, Inc. v. City of New Castle*, 959 N.E.2d 369, 376 (Ind. Ct. App. 2012), *trans. denied*. We consider only the arguments set out in Brian's appellate briefs. Having reviewed Paula's response to Brian's motion to correct error, we conclude that the response does not mischaracterize the evidence in a manner that requires striking it in part.

# II. Paula's Medical Expenses

[18] Brian argues that the trial court erred in ordering him to pay Paula $3,720 for medical expenses she incurred after he filed his petition to dissolve the marriage.

[19] The trial court entered findings of fact and conclusions thereon upon its own motion. When a court has made special findings of fact, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Ind. Trial Rule 52(A).

[20] We review challenges to the findings using a two-step process. *Morgal-Henrich v. Henrich*, 970 N.E.2d 207, 210 (Ind. Ct. App. 2012). First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's conclusions. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.* We do not reweigh the evidence or assess the credibility of witnesses. *Pitcavage v. Pitcavage*, 11 N.E.3d 547, 552 (Ind. Ct. App. 2014).

[21] In denying Brian's motion to correct error, the court noted that it would not change its conclusion that Brian should pay Paula $3,720 for post-filing medical

expenses because "the evidence warranted" the conclusion. Appellant's App. p. 199.

[22] The evidence is as follows. On July 31, 2012, the trial court issued a provisional order barring Brian from dropping Paula from his health care insurance plan. Both parties agreed to the order. A provisional order is designed to maintain the status quo of the parties. *Mosley v. Mosley*, 906 N.E.2d 928, 929 (Ind. Ct. App. 2009). A trial court may issue a temporary restraining order on a provisional basis to the extent the court considers proper. Ind. Code § 31-15-4-8 (1997). A provisional order terminates when the final dissolution decree is entered or the petition for dissolution is dismissed. Ind. Code § 31-15-4-14 (1997).

[23] Brian's employer ended his insurance coverage in August 2013, but Brian did not notify Paula until he filed a motion on October 1, 2013. She actually received notice on October 2, after she had undergone an examination and incurred $3,720 in expenses. Subsequent negotiations resulted in a second provisional order, in which Brian was ordered to pay Paula $200 per month for three months "to allow her to obtain her own health insurance." Appellant's App. p. 100. Both parties agreed to the order.

[24] Brian did not pay Paula the $200 per month for three months. In addition, the trial court heard evidence that Paula struggled economically during the marriage dissolution proceedings because her ex-husband owed her money and she incurred additional debt to help pay her daughter's college expenses.

The court's provisional orders reflected an intent that Brian should maintain responsibility for Paula's health insurance during the dissolution proceedings. Brian did nothing to cause the termination of his insurance coverage, but his delay in informing Paula resulted in her unknowingly incurring medical expenses without insurance. Furthermore, he violated a court order directing him to pay Paula $600 over three months. Under these circumstances, the court's conclusion that Brian should pay Paula $3,720 for her medical expenses is supported by the evidence and is not clearly erroneous.

# III. Identification, Valuation, and Division of the Marital Estate

## A. Investment Funds as Marital Assets

Brian claims the trial court erred in concluding that two financial accounts were part of the marital estate. He argues that they were educational accounts to be used for his daughter's college expenses and should not have been considered marital assets.

In Indiana, all marital property goes into the marital pot for division, whether it was owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to the parties' final separation, or acquired by their joint efforts. Ind. Code § 31-15-7-4 (1997). The "one pot" theory ensures that all assets are subject to the trial court's power to divide and award. *Hill v. Hill*, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007). The trial court may determine that a particular asset should be awarded solely to one spouse, but it must first include

the asset in its consideration of the marital estate to be divided. *Trabucco v. Trabucco*, 944 N.E.2d 544, 553 (Ind. Ct. App. 2011), *trans. denied*. The trial court has no authority to exclude or set aside marital property but must divide all property. *Campbell v. Campbell*, 993 N.E.2d 205, 213 (Ind. Ct. App. 2013), *trans. denied*.

[28] The funds at issue are an American Funds fund, which Brian opened in 2005 prior to the marriage, and a Lord Abbott fund, which Brian opened in 2010 shortly after Brian and Paula separated for the first time. The trial court determined that both funds were marital assets and that the growth in value in those funds during the marriage should be included in the marital estate.

[29] The evidence presented at trial demonstrated that neither fund was a dedicated college savings fund. To the contrary, although the funds may have eventually been used for college expenses, they were also intended to serve as sources of money for Brian in case of emergency. They were for his use as well as his daughter's. In addition, after Brian and Paula reconciled, she asked him to identify his various funds. He identified the American Funds account as "an investment account" rather than a college fund. Tr. p. 122. This is sufficient evidence from which the trial court could reasonably conclude that the funds were not set aside exclusively for Brian's daughter's college expenses but were instead marital assets. *See Trabucco*, 944 N.E.2d at 554 (investment account properly included in marital pot because, although it was primarily intended for child's college expenses, it was funded with marital assets and parents were entitled to whatever was left in the account after child completed college).

# B. Valuation of the Marital Home

[30]     Brian challenges the trial court's valuation of several marital assets, beginning with the marital home. The trial court has broad discretion to assign values to the marital assets in a dissolution action. *Pitcavage*, 11 N.E.3d at 563. We will not disturb the trial court's valuation absent an abuse of discretion. *Id.* If a trial court's valuation is within the scope of the evidence, the result is not clearly against the logic and effect of the facts and reasonable inferences before the court. *Webb v. Schleutker*, 891 N.E.2d 1144, 1151 (Ind. Ct. App. 2008). We may not reweigh the evidence or judge the credibility of the witnesses, and we consider only the evidence most favorable to the trial court's disposition. *Alexander v. Alexander*, 927 N.E.2d 926, 933 (Ind. Ct. App. 2010), *trans. denied*.

[31]     Brian and Paula purchased the marital home prior to the marriage for $502,500. Brian sold it in 2013 for $448,000. The trial court made the following finding of fact regarding valuation of the home:

> After Wife vacated the marital residence Husband claims it became necessary to sell it. This claim may not be supported by the evidence. Husband claims that Wife made little or no contribution to any of the expenses, including the mortgage. That Husband was paying for everything. So when Wife left little changed. Husband claims he even paid down the mortgage by $11,500 from date of separation through the sale of the home—again, without contribution by Wife. So why absorb an

> $115,000.00 loss on the marital real estate as Husband claims on
> page 14 paragraph 24 of his Conclusions of Law.[sic][3]

Appellant's App. p. 115.

[32] This finding is supported by the evidence. Paula's contributions to the mortgage were limited and sporadic. Brian's salary was not cut from $178,500 to $71,400 until after he sold the marital home, so at the time of the sale he could still afford to continue to pay the mortgage by himself and did.

[33] Furthermore, in its conclusions the trial court valued the marital residence at a loss, in the amount of -$6,414, and assigned the debt to Brian. Brian submitted a worksheet of assets and liabilities to the court, in which he valued the home as a liability worth -$6,414. Petitioner's Ex. 28. The court's valuation of the home was thus within the range of the evidence presented to the court, and there was no abuse of discretion. *See Alexander*, 927 N.E.2d at 935 (court's valuation of tract was within the range of estimated values presented to the court, so no abuse of discretion).

## C. Valuation of the Boat

[34] Brian and Paula purchased a boat in 2007. The trial court issued the following findings and conclusions as to the boat:

> [Findings of Fact]

---

[3] After the second evidentiary hearing, the trial court ordered the parties to email proposed findings and conclusions to the court reporter. Brian has not included his proposed findings of fact and conclusions thereon in his Appendix.

25. The parties purchased a boat during the course of the marriage which, at the time of the final hearing, had a book value of $31,900-$45,200. The Husband asked the Court to include a consignment fee of 15%, for the sale of the boat. Yet in his Conclusions of Law he requests that the boat be set over to him. The current payoff (September 30, 2013) is $47,238. The Court declines to assess a 15% consignment fee and determines the value of the boat for the marital estate purposes is ($2,038.00).

* * * * *

50. Husband is willing to assume the debt related to the parties' boat and upon which he has paid all of the payments.

[Conclusion of Law]

7. During the marriage Husband paid all of the payments on the parties' timeshares and all of the payments on the boat.

Appellant's App. pp. 115, 118, 120. The court determined that the boat was a liability, assigned it a value of "-2,038," and assigned the debt to Brian. *Id.* at 122.

[35] Brian argues that the trial court erred in finding that he was willing to assume all debt related to the parties' boat. He claims he wanted to sell the boat, and the costs of maintenance, storage, and any commission resulting from the sale of the boat should not have been assigned to him alone. Brian has not included his proposed findings of fact and conclusions thereon in his Appellant's Appendix. The purpose of an appendix is to present the Court with the parts of the record on appeal that are necessary to decide the issues presented. Ind. Appellate Rule 50(A)(1). Brian's failure to include his proposed findings and conclusions in his appendix does not waive this issue on appeal. Ind. Appellate Rule 49(B). Nevertheless, without Brian's proposed findings and conclusions,

we are unable to review Brian's challenge to the trial court's determination that Brian had requested that the boat be set over to him and was willing to assume all debt. There is no basis for reversal.

[36] In any event, the valuation the trial court assigned to the boat was within the range of evidence presented by Brian, and there was no abuse of discretion. *See Alexander*, 927 N.E.2d at 939-40 (no abuse of discretion in valuing bass boat when trial court relied on evidence presented by appellant).

## D. Valuation of Paula's Jewelry

[37] Brian argues that the trial court undervalued Paula's wedding rings and diamond earrings. The court issued the following findings with respect to the jewelry:

> 26. Husband values Wife's jewelry at [$]25,000.00. Wife values her jewelry at $7,750.00. Court accepts Wife's value.
>
> * * * * *
>
> 51. Husband is willing to transfer any interest he has in Wife's jewelry directly to Wife. Such a transfer represents a value of $7,750.00.

Appellant's App. pp. 116, 118. The Court valued the jewelry at $7,750.00 and assigned that asset to Wife.

[38] Brian argues that the trial court should have accepted his proposed valuation of Paula's wedding ring and earrings because he submitted professional appraisals in support of his claim, and Paula merely offered her own testimony. In *Pitcavage*, a panel of this Court upheld the trial court's valuation of an

engagement ring based on a witness's uncorroborated testimony. 11 N.E.3d at 564. Further, there is evidence here that Brian's professional appraisals of the ring and earrings do not reflect fair market value. Brian conceded that the appraisal did not reflect the purchase price, stating "I know I didn't pay that much when I bought [them]." Tr. p. 101. The trial court did not abuse its discretion.

## E. Equal Division of the Marital Estate

Brian asserts that the trial court should not have divided the marital estate equally. He further claims that the court did not, in fact, divide the marital assets and liabilities equally.

In Indiana, courts presume that an equal division of marital property is just and reasonable. Ind. Code § 31-15-7-5 (1997). A party may rebut this presumption by presenting "relevant evidence . . . that an equal division would not be just and reasonable." *Id.* The evidence may address the following factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> (A) before the marriage; or
>
> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell

in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.*

[41] When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the statute. *Galloway v. Galloway*, 855 N.E.2d 302, 304 (Ind. Ct. App. 2006). We may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's judgment. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[42] The facts and reasonable inferences therefrom support the trial court's equal division of the marital estate. Brian brought far more assets to the marriage than Paula, but he was aware before the marriage that she was in difficult financial circumstances, and those circumstances continued throughout the marriage and after their final separation. In addition, although Brian paid the down payment on the house, Paula, through her job, obtained a waiver of the realtor's commission on the purchase. Brian made the mortgage payments, but Paula cleaned the house and maintained the yard on her own. Brian purchased most of the marital assets, including timeshares, before and during the

marriage, but his income was much higher than Paula's throughout the marriage. Finally, at the time of the issuance of the divorce decree, both parties had experienced decreased income, but Brian's was still higher than Paula's and he had the potential to earn more upon returning to full-time employment. The trial court did not abuse its discretion. *See Morgal-Henrich*, 970 N.E.2d at 212 (appellant failed to rebut presumption of equal division of marital pot even though appellant brought substantial assets to the marriage).

[43] Next, Brian argues that the trial court's division of assets was not equal because the court assigned incorrect values to marital assets, specifically, the house, the boat, and Paula's jewelry. Brian also argues that the Lord Abbott fund and American Funds fund were not marital assets. We have already determined that the trial court's determinations were within its discretion, and we need not address this issue further.

# IV. Trial Court's Award of Attorney's Fees

[44] Brian claims the trial court erred in ordering him to pay Paula $2,500 as partial compensation for her attorney's fees. A court presiding over a dissolution matter "may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending" the case. Ind. Code § 31-15-10-1 (1997). The cost may include attorney's fees. *Id.* The trial court has broad discretion in awarding attorney's fees, and we will reverse an award only where the decision is clearly against the logic and effect of the facts and circumstances. *Luttrell v. Luttrell*, 994 N.E.2d 298, 305 (Ind. Ct. App. 2013), *trans. denied*. In assessing

attorney's fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors which bear upon the reasonableness of the award. *Id.*

[45] In this case, the trial court noted in its dissolution decree that, with respect to an award of attorney's fees, "Husband earns significantly more than the Wife." Appellant's App. p. 118. The evidence demonstrates that, at the time that the court issued the decree of dissolution, Brian had greater income than Paula. Furthermore, he had the potential to earn even more income because he was working only two days a week. Although Brian was supporting a minor child, Paula's ex-husband owed her money arising from their divorce, and his failure to pay put her in difficult financial straits. Finally, the court held Paula responsible for her own debts, which were far greater than Brian's. For these reasons, the trial court did not abuse its discretion in awarding attorney's fees to Paula. *See Gillette v. Gillette*, 835 N.E.2d 556, 564 (Ind. Ct. App. 2005) (no abuse of discretion in attorney's fee award where appellant had significantly more resources than appellee).

# V. Appellate Attorney's Fees

[46] Brian and Paula both claim that they are entitled to awards of appellate attorney's fees. Indiana Appellate Rule 66(E) authorizes the Court to "assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith." Damages may include attorney's fees. *Id.* A strong showing is required to justify an award of appellate damages. *Harness v. Schmitt*, 924 N.E.2d 162,

168 (Ind. Ct. App. 2010). We assess appellate damages against a party who in bad faith presents wholly frivolous arguments on appeal. *Id.* Here, neither party's arguments meet this criteria. We reject both parties' claims for appellate attorney's fees. *See Trost-Steffen v. Steffen*, 772 N.E.2d 500, 514 (Ind. Ct. App. 2002) (Court declined to award appellate attorney's fees because appellant's arguments, although unsuccessful, did not justify an award), *trans. denied*.

[47] For the foregoing reasons, we affirm the judgment of the trial court.

[48] Affirmed.

Baker, J., and May, J., concur.