**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MELANIE REICHERT**
Broyles Kight & Ricafort, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DEBORAH L. FARMER**
Campbell Kyle Proffitt LLP
Carmel, Indiana

FILED

Feb 23 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL O'REILLY, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1108-DR-399 |
| | ) | |
| RUTH DOHERTY, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Wayne A. Sturtevant, Judge
Cause No. 29D05-0706-CR-879

**February 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

The marriage of Daniel O'Reilly ("Husband") and Ruth Doherty ("Wife") was dissolved pursuant to an agreement that covered all issues except attorney's fees, and a hearing was held solely on that issue. Wife and her attorney testified to several incidents of misconduct on Husband's part that resulted in higher fees for Wife. Husband denied or offered justifications for some of the alleged misconduct. Wife works part of the year as a school secretary and received a slightly larger portion of the marital estate. The trial court found that Husband was not a credible witness and ordered him to pay $30,000 of Wife's attorney's fees. Husband appeals the attorney fee award, arguing that his misconduct accounts for less than $5000 of Wife's attorney's fees and that the parties' resources, which are currently about equal, do not justify the amount awarded to Wife. Based on the evidence favorable to the judgment, we cannot say that the trial court abused its discretion; therefore, we affirm.

**Facts and Procedural History**

On June 7, 2007, Wife filed a petition for dissolution. Before their separation, the parties lived in Fortville with their three sons. Husband later purchased a residence for himself in Fishers. On June 22, 2007, the parties reached a preliminary agreement regarding parenting time, child support, and the payment of various expenses. The agreement stated that the parties would comply with the Parenting Time Guidelines, "specifically those provisions dealing with courtesy, privacy and communication." Appellant's App. at 17. At Husband's request, the parties agreed to have Dr. John Ehrmann perform a custody

2

evaluation. Husband agreed to pay the mortgages on both residences, health and auto insurance premiums, the children's uninsured health expenses, and the children's school expenses.

On September 29, 2008, Wife filed a motion for rule to show cause, alleging that Husband had not paid some of the expenses that he was required to pay pursuant to the agreement. Wife served interrogatories on Husband, which he failed to answer. On November 10, 2008, Wife filed a motion to compel Husband to respond to her discovery requests, and the trial court granted Wife's motion a few days later. On November 26, 2008, Wife filed a motion for sanctions because Husband still had not fully responded to her discovery requests. After a hearing on December 4, 2008, the court ordered Husband to respond to all of Wife's pending discovery requests within thirty days and to pay $3795 in attorney's fees to Wife's attorney. The court also found Husband in contempt for failing to pay for school supplies, auto insurance, uninsured health care costs, and the registration for Wife's vehicle. He was ordered to reimburse Wife in the amount of $1206.88.

Wife is a United States citizen, but is originally from the United Kingdom, and her mother still lives there. Wife wanted the children to have passports so that they could come with her in the event that she chose to visit her mother. Husband refused to sign the children's passport applications, claiming that Wife had threatened to take the children abroad and keep him from ever seeing them again.[1] On January 22, 2009, Wife filed a petition requesting the court to compel Husband to sign the passport applications, which the

---

[1] Wife denied making any such statement.

court granted.

On February 2, 2009, Wife filed another motion for sanctions because Husband still had not responded to all discovery requests. On February 11, 2009, the court ordered Husband to respond to discovery requests within fifteen days and took the issue of attorney's fees under advisement.

Meanwhile, Husband had decided that he no longer wanted Dr. Ehrmann to perform the custody evaluation. The parties agreed to have Dr. Jonni Gonso perform the custody evaluation, and she completed her report on August 20, 2009. On December 17, 2009, Husband filed a request that Dr. Gonso submit an updated evaluation, which the court granted on December 31, 2009. Dr. Gonso completed the updated evaluation on September 16, 2010.

On May 20, 2010, the parties participated in court-ordered mediation. The parties disagree somewhat on what happened at mediation. Wife testified that she was at mediation from 9:00 a.m. to 11:30 p.m. She stated that Husband left around 9:30 p.m. without responding to her offer. One of the issues that they were attempting to resolve was the parenting time schedule for the children's summer vacation. Wife claims that Husband unilaterally chose to use one of their draft agreements from the mediation and made plans to take the children out of state on short notice. Husband testified that he left mediation sometime between 10:00 p.m. and 12:00 a.m. after rejecting an offer from Wife. He stated that he left because he had not eaten since 11:30 a.m. and needed to get up early for work the next day.

On February 25, 2011, the parties submitted an agreed order on all issues except attorney's fees. The court entered an order dissolving the marriage and incorporating the parties' agreement. Wife received the Fortville residence, and Husband received the Fishers residence. Various accounts and other assets were divided between the parties, and Wife also paid $50,000 cash to Husband to bring her share of the marital estate to somewhere between 52% and 56%.[2]

Evidentiary hearings on the issue of attorney's fees were held on April 13 and July 1, 2011. Wife testified that she started working as a secretary at Geist Elementary School in August 2007. She works during the school year and a few weeks before and after. She works thirty hours per week and earns about $16 per hour. Wife testified that she would like to work during the summer break, but she and Husband have "never been able to resolve the summer calendar until the day the boys get out of school, so it's been really difficult to do that. Most summer jobs by then are taken by college students or high school students." Tr. at 32.

Wife testified to several problems that she felt were Husband's fault and caused her to incur attorney's fees. Wife testified that she tried to coordinate parenting issues via email, but Husband often refused to respond. She stated that Husband frequently sent her messages through the children despite the fact that it was repeatedly pointed out to him that

---

[2] The exact value of Wife's share is in dispute because the parties could not agree on the value of the Fortville residence.

5

communicating through the children is discouraged by the Parenting Time Guidelines.[3] Counsel had to get involved with ordinary parenting duties such as coordinating the children's sports activities, telephone contact with the children, and coordinating appointments.

Wife testified that Husband took the children to a new dentist, and she was not aware of it until the children's regular dentist told her that the children's records had been transferred. Wife had to get counsel involved because Husband would not tell her who the new dentist was. On one occasion, the children's doctor needed to cancel an appointment and was unable to reach Wife. The doctor called Husband to get Wife's cell phone number, but Husband refused to provide it. As a result, Wife showed up to the canceled appointment.

Wife testified that Husband was the one who requested the custody evaluation, but he canceled his appointment with Dr. Ehrmann. Months later, Husband indicated that he wanted Dr. Gonso to perform the evaluation instead. After Wife agreed to that, Husband waited several more months before scheduling an appointment. After the evaluation was done, the case continued to drag on, and Husband requested an updated evaluation. That was granted in December 2009, but the appointment was not made until sometime in the summer of 2010. The final dissolution hearing was originally scheduled for July 29, 2010, but was reset because Husband's counsel filed a motion to withdraw the day before the hearing and because the updated custody evaluation was not completed until September 16, 2010.

---

[3] Section I(A)(1) of the Parenting Time Guidelines states: "All communications concerning the child shall be conducted between the parents…. A child shall not be used to exchange documents or financial information between parties."

Wife testified that it was a "constant battle" every year to get the health insurance cards from Husband and that she has never gotten them without getting counsel involved. *Id.* at 17. She stated that counsel had to get involved about every six months to get him to pay the auto insurance as required by the preliminary agreement.

Wife testified that Husband sometimes came to her home without permission and had the children retrieve or drop off items.[4] On one occasion, Wife caught Husband taking a play gym from her yard. She had to go through counsel to get it back and to get him to heed her request that he not come to her house without obtaining her permission beforehand.

In 2008, Husband was arrested for operating while intoxicated, and his driver's license was suspended from June 6 to December 3, 2008. Wife observed him driving a vehicle with the children as passengers during the time that his license was suspended. Wife had to involve counsel to get Husband to stop driving with the children without a valid license.

Wife testified that she has incurred about $75,000 in attorney's fees in this case. She borrowed $12,000 from her mother to make a payment toward her attorney's fees and still has a balance of about $32,000. She requested that the court order Husband to pay her remaining balance and the money that she borrowed from her mother.

Wife's counsel testified in more detail about the attorney's fees incurred by Wife. She testified concerning her efforts to obtain complete discovery responses after the December

---

[4] Around the time that she filed for divorce, Wife obtained a protective order against Husband. The protective order was not included in the record, so we are not aware of its terms or duration. It is not clear from Wife's testimony whether these incidents involved conduct that would have violated the protective order. Based on Wife's Exhibit 10, which contains correspondence between the attorneys involved in this case, it appears that at least some of the incidents involved the children picking up or dropping off their own belongings rather than Husband using the children to take things that belonged to Wife.

2008 order compelling Husband to respond and awarding attorney's fees. In particular, Husband claimed that he did not have any retirement plan through Wyeth, a former employer. Although Husband claimed that he believed any benefits from Wyeth had been rolled over into an IRA that had already been disclosed, Wife believed that Husband was aware of the pension because she received a letter from Wyeth confirming that Husband had changed his address from the Fortville residence to his new residence in Fishers. Ultimately, Wife had to use a non-party request for production of documents to confirm the existence and value of Husband's Wyeth pension. Counsel for Wife testified that her efforts to obtain discovery responses after the December 2008 order caused Wife to incur additional attorney's fees of $1453.

Counsel for Wife testified that $500 in fees were attributable to delays in completing the custody evaluation. Another $500 were attributable to the issue of Husband driving the children while his license was suspended. The passport issue accounted for $600 of Wife's attorney's fees. Counsel for Wife testified that "a minimum of a thousand dollars" was attributable to issues such as using the children as messengers, not providing health insurance cards, and not paying auto insurance. *Id*. at 51.

Counsel for Wife also felt that attorney's fees were driven up by the fact that Husband changed counsel twice during the case:

> [E]ach time there was a change of lawyers, it involved, I think, more work to be done and just getting everybody up to speed, and the nature of cases is such that whenever there's a delay, a high-conflict case continues to be high conflict. And if the case goes on for three or four years, that's just three or four years' worth of opportunities for a couple to argue over things like getting the bicycles and the summer schedule and that causes attorney fees. And I

8

respectfully suggest that Mr. O'Reilly has been somewhat more responsible for the delays than Ms. Doherty with the length of time it took him to get custody evaluations under way.

*Id*. at 50.

Husband testified that he previously had a high-paying job at Lilly; however, he lost his job due to downsizing on November 1, 2010, and he started collecting unemployment benefits. After unsuccessfully searching for a comparable job, Husband went back to school to get certified as a teacher. Husband is attending school fulltime and is not employed. He expects to get his certification in July 2012. A large portion of his share of the marital estate is in retirement accounts that have a ten percent penalty for withdrawals. Currently, he is paying for his expenses with the $50,000 cash he got in the divorce settlement and has not borrowed any money. Husband testified that he owes "tens of thousands" to his second attorney and has a balance of about $5000 with his current attorney. *Id*. at 77. He does not believe that he can afford to pay Wife's attorney's fees.

Husband testified that he never scheduled an appointment with Dr. Ehrmann because he and Wife were getting counseling and it was possible that they would reconcile. Husband testified that he felt that Wife had also "frequently" violated their preliminary agreement, but he did not identify any specific issues. *Id*. at 76.

On July 8, 2011, the court ordered Husband to pay $30,000 to Wife's attorney within 365 days. The court found that Wife's attorney's hourly rate of $275 was reasonable given her experience, training, and skill. The court explicitly found that Husband was not credible. The court found that Husband's multiple changes of counsel resulted in higher fees for both

parties and that Wife incurred unnecessary fees due to: (1) Husband's refusal to sign passports; (2) Husband's failure to disclose the Wyeth pension; (3) delays in completing the custody evaluation requested by Husband; (4) Husband's license suspension; and (5) Husband's repeated failure to respond to discovery requests. The court further found that Wife incurred at least $1000 to address issues such as Husband's entering her residence without permission, speaking derogatorily about her to the children, not providing insurance cards, and taking a child to new a dentist without Wife's knowledge. The court found that neither party was "in a good position to pay legal fees," but nonetheless concluded that based on Husband's conduct and the parties' financial resources, Husband should pay a portion of Wife's attorney's fees. Appellant's App. at 14-15. Husband now appeals the order requiring him to pay $30,000 of Wife's attorney's fees.

### Discussion and Decision

In dissolution cases, the trial court is statutorily authorized to award attorney fees:

> The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

Ind. Code § 31-15-10-1.

> We review a trial court's award of attorney fees in connection with a dissolution decree for an abuse of discretion. The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. When making such an award, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and other factors that bear on the reasonableness of the award.

10

*Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007) (citations omitted). The court may also consider whether a party has committed misconduct that results in additional litigation expenses. *Mitchell v. Mitchell*, 875 N.E.2d 320, 325 (Ind. Ct. App. 2007), *trans. denied*.

Husband argues that even if all of Wife's allegations concerning his conduct are true, the evidence demonstrates that his conduct caused only $4100 in additional fees, and that their respective financial situations do not warrant the additional $25,900 that the court ordered him to pay.

First, we note that Wife's attorney testified that Husband's conduct resulted in a *minimum* of $4100 in additional fees. The trial court appears to have credited her testimony that $4100 is a conservative estimate. In addition, the court found that Husband's multiple changes in counsel also required Wife's counsel to spend additional time on the case. We note that Husband's second attorney filed a motion to withdraw a day before the final hearing was scheduled to commence, which would support an inference that at least one of Husband's changes in counsel was motivated by a desire to delay the case. The trial court's award appears to contemplate that Husband's actions cost Wife somewhat more than $4100 in attorney's fees. Husband does not cite any authority indicating that the trial court was required to give an exact breakdown of the amount of the award attributable to Husband's misconduct.

Husband argues that he should not be faulted for the failed mediation, noting his testimony that he participated for thirteen hours, responded to Wife's final offer, and left only

11

because he had not eaten for several hours and had to wake up early the next day. The trial court mentions the failed mediation in the first paragraph of its order, which outlines the procedural history of the case. It is not clear that the court actually based any part of its award on the failed mediation. Even if it did, we would have to look at the evidence favorable to the court's judgment. *See Cannon v. Cannon*, 677 N.E.2d 566, 570 (Ind. Ct. App. 1997) (when applying reviewing an award of attorney's fees for abuse of discretion, we do not reweigh evidence or judge witness credibility), *trans. denied*. Wife's account of the mediation conflicted with Husband's, and the trial court explicitly found that Husband was not credible.

Husband argues that Wife's actions also caused him to incur additional attorney's fees, but the pages of the transcript to which he cites do not support that claim. Husband has not identified any specific misconduct on Wife's part.

As to the parties' financial resources, Husband emphasizes the court's finding that "[n]either party is in a good position to pay legal fees." Appellant's App. at 14-15. Husband further notes that Wife received a slightly larger share of the assets and that their current financial resources are similar. Although neither party is in a good position to pay attorney's fees, that does not preclude the trial court from finding that Husband is in a *better* position than Wife. As Wife points out, she has had to borrow money to pay her attorney's fees, whereas Husband testified that he has not had to borrow money to meet his financial obligations. And while Husband is currently unemployed, he anticipates becoming certified

12

to teach by July 2012, and he still has the potential to work in the pharmaceutical field if a position becomes available.

In light of the evidence of the parties' conduct and financial resources that is favorable to the court's judgment, Husband has not shown that the trial court abused its discretion by ordering him to pay $30,000 of Wife's attorney's fees. Therefore, we affirm.

Affirmed.

MAY, J., and BROWN, J., concur.