Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIM J. CAIN**
Angola, Indiana

ATTORNEY FOR APPELLEE:

**KATHRYN C. BYROM**
Kendallville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TODD EDWARD LANG, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 17A03-1109-DR-436 |
| | ) | |
| JESSICA LYNN LANG, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE DEKALB SUPERIOR COURT
The Honorable Monte L. Brown
Cause No. 17D02-1004-DR-125

**May 2, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

The marriage of Todd E. Lang ("Husband") and Jessica L. Lang ("Wife") was dissolved by the DeKalb Superior Court. Husband appeals the dissolution decree and specifically challenges the trial court's decision to award custody of the parties' minor children to Wife and to order the parties to equally share the expense of the custody evaluation.

We affirm.

### Facts and Procedural History

Husband and Wife had a tumultuous two-year marriage, and one child was born to the marriage. Husband also adopted Wife's son, J.L., who was almost two years old on the date the parties married.

Approximately seven months after they were married, Wife, who was pregnant, moved out of the marital residence and filed for divorce. Husband had no contact with Wife and two-year-old J.L for nearly six weeks. Wife and J.L. moved back into the marital residence in January 2009, and M.L. was born on February 3, 2009.

When M.L. was eight weeks old, Husband evicted Wife from the marital residence. The date Husband told her to vacate the home was during Wife's first week back to work following her maternity leave and both boys were ill at the time. Thereafter, Husband did not have any contact with Wife or the children for approximately twelve weeks. And Husband was disputing his paternity of M.L. at that time.

During the summer months of 2009, Wife and the children began to have contact with Husband, and they began staying overnight with Husband in the fall. Wife and the

2

children moved back into the marital residence in November. Shortly thereafter, Husband adopted J.L.

For nearly three weeks in February, Husband, who is a Department of Natural Resources conservation officer, went on a trapping trip. Wife was unable to contact Husband because he did not have cell phone service, but Husband did check on Wife and the children every couple of days.

Eleven days after he returned from the trip, Husband filed for divorce. On that same day and without contacting Wife, Husband removed the children from their babysitter's care and took the children to his parents' home in southern Indiana. Wife was still nursing M.L. on that date. Husband did not return the children to Wife for two weeks.

During these dissolution proceedings, Husband filed a petition for psychological evaluations for himself, Wife, and the children. Wife objected to the petition and the trial court denied the petition on July 16, 2010. Shortly thereafter, Husband filed a petition for a custody evaluation, and Wife again objected. On August 13, 2010, the trial court entered an order granting Husband's request for a custody evaluation.

Dr. David Lombard, the custody evaluator, met with the parties, observed the parties with their children, administered psychological assessment tests, and performed a home study. Dr. Lombard also reviewed the parties' diaries, letters from family members and friends, police reports, and pleadings filed in the dissolution proceedings. Finally, Dr. Lombard reviewed over one hundred audio recordings made by Husband of interactions between Husband and Wife.

Husband described many incidents where Wife disparaged him in front of the children, screamed profanities at Husband, and was physically violent towards him. Wife generally denied violence towards Husband, but did admit that she poked him hard in the chest during an argument while they were driving to a marriage counseling session. Husband reported to the police that Wife hit his chest hard in addition to poking him.

The parties also had significant conflict concerning Husband's work schedule. Husband's employer provides his monthly work schedule six to nine days before it begins and the schedule is written in code. Wife complained that his schedule would often change from the schedule initially provided to her and/or that Husband would not give her the schedule in advance. She also complained that she was required to "decode" the schedule and that Husband did not always provide her with the key.

Wife has been the children's primary caretaker throughout their young lives and has not spent any significant amount of time apart from the children except when Husband unilaterally removed them from her care on the date he filed for divorce. Husband generally only cared for the children's basic needs, such as changing diapers, preparing meals, feeding the children, and bathing them, when Mother was unavailable.

After preparing a detailed custody evaluation, Dr. Lombard recommended that it was in the children's best interests for Wife to have primary legal and physical custody, and Husband should have parenting time according to the Indiana Parenting Time Guidelines. Dr. Lombard also recommended that both parties seek counseling to deal with their anger management issues.

In arriving at his recommendation, Dr. Lombard observed that Husband uses his work schedule "as a way to control" Wife "and not allow her to plan for the weeks in advance." Appellant's App. p. 43. Dr. Lombard also opined that Husband has used the right of first refusal "as a method of controlling and harassing" Wife. Id. Dr. Lombard also indicated:

> [Husband's] need to control situations has caused significant disruption in the children's lives. He reported that at an earlier separation with his wife, he demanded that she and the children leave immediately. . . . [Husband] gave them a very short amount of time to gather any belongings, and he began recording interactions as third parties were trying to convince him to calm down and give her and the children a day extra to move out. He also indicated that for the most recent separation, without notice he took the children out of town for two weeks when he filed for divorce. He also took several measures to limit [Wife's] access to the joint marital property when he left for those two weeks. He reported that he did not see this as being overly disturbing to the children. . . . Again, [Husband's] maladaptive need to control situations led him to disrupt the children's lives in order to meet his own needs of divorcing and separating from his wife.

Id.

A two-day dissolution hearing commenced on July 26, 2011. At the end of the hearing, the trial court granted the dissolution of marriage and restored Wife's maiden name to her, but took all other matters under advisement. On August 21, 2011, the trial court issued its supplemental order and sua sponte entered findings of fact on certain issues. With regard to custody, the trial court found:

> The Court finds that it is in the best interest of the parties minor children that [Wife] have the legal and physical custody of the children. The Court specifically finds that an award of joint legal custody is not appropriate because the parties did not agree to an award of joint legal custody and for the reason that the communication issues between the parties [are] so significant it is clear that the parties do not have the necessary willingness

5

and ability to communicate or cooperate in advancing the children's welfare.

Id. at 49. Husband was awarded parenting time in accordance with the Parenting Time Guidelines. Husband was also ordered to provide Wife with a copy of his schedule "clearly stating the days and times [Husband] anticipates exercising the parenting time he is entitled to under the" Guidelines. Id. Husband now timely appeals the trial court's custody decision.

**Standard of Review**

A trial court's custody determination is afforded considerable deference because "the trial judge is in the best position to judge the facts, . . . to get a sense of the parents and their relationship with their children—the kind of qualities that appellate courts would be in a difficult position to assess." MacLafferty v. MacLafferty, 829 N.E.2d 938, 940 (Ind. 2005). Although the General Assembly and our Supreme Court "have promulgated a series of statutes, rules, and guidelines" to bring consistency and predictability to family law decisions, the "importance of first-person observation and avoiding [familial] disruption remain compelling reasons" for the deference afforded to the trial court. Id. at 941.

Here, the trial court entered findings of fact sua sponte; therefore, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. Brinkmann v. Brinkmann, 772 N.E.2d 441, 444 (Ind. Ct. App. 2002). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory

6

supported by the evidence. Hanson v. Spolnik, 685 N.E.2d 71, 76 (Ind. Ct. App. 1997), trans. denied. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. Id. at 76-77. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. at 77. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings. Id.

## I. Custody Determination

The standard for a custody determination is set forth in Indiana Code Section 31-17-2-8, which reads in pertinent part as follows:

> The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
> (A) the child's parent or parents;
> (B) the child's sibling; and
> (C) any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
> (A) home;
> (B) school; and
> (C) community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.

The trial court may also consider other relevant factors that are not explicitly enumerated in the statute. Russell v. Russell, 682 N.E.2d 513, 515 (Ind. 1997).

> Although a court is required to consider all relevant factors in making its determination, it is not required to make specific findings. A trial court's custody determination is reviewable only for an abuse of discretion. An abuse of discretion occurs where the decision is clearly against the logic and effect of the evidence before the court.

Id. (footnote and citations omitted). Importantly, when we review for an abuse of discretion, we do not reweigh the evidence or judge the credibility of the witnesses. See Marks v. Tolliver, 839 N.E.2d 703, 707 (Ind. Ct. App. 2005).

Husband challenges the trial court's custody determination on two grounds. First, Husband asserts that the trial court must not have considered the statutory factors because it did not specifically state that it had. But, as our supreme court has said, a trial court is "not required to make specific findings." Russell, 682 N.E.2d at 515. Husband's claims of trial court error in that regard are thus without merit, especially in light of the fact that the parties presented evidence on the relevant section 31-17-2-8 factors. And there is nothing in the record that would lead us to conclude that the trial court did not consider the statutorily enumerated factors.

Husband also argues that the trial court abused its discretion when it awarded custody of the children to Wife because of "several incidents of domestic violence perpetrated upon him by [Wife] in the presence of the boys[.]" Appellant's Br. at 8. But it was within the province of the trial court to weigh Husband's testimony and determine its credibility. Wife generally denied any physical violence toward Husband or offered her own testimony describing the incidents at issue, except that she did admit that she poked him hard in the chest during an argument.

8

Husband also directs our attention to the recordings Husband made of his interactions with Wife where she cursed at him or disparaged him. Dr. Lombard reviewed the recordings and reached the following conclusion:

> [Husband] presented over a hundred audio recordings for review. The documentation indicated that on many dates he had made numerous recordings. The documentation itself indicated an obsessive attempt to record almost every interaction between him, the mother, and the children. The high number of recordings presented for review indicated that the father has an obsessive focus on attempting to prove his side of the issue. The numerous recordings indicated that he has spent significant time and effort on documentation as opposed to other more productive parenting activities. Several recordings indicated that [Wife] raised her voice to him during disagreements. However, his recordings also indicated that many times he had created the initial conflict.

Appellant's App. p. 35. The recordings were also admitted into evidence at the dissolution hearing and the trial court had the opportunity to review them. The recordings, some of which were made without Wife's knowledge, reflect poorly on both parties. Certainly, Wife should not disparage Husband and needs to address her anger issues, but there is also no evidence in the record indicating that Wife has ever acted in anger toward the children. And there is nothing in the record that would lead us to conclude that the trial court failed to consider the recordings when issuing its custody determination.

Finally, Husband's argument that "all credible evidence led to only one possible conclusion, that [Husband] should be custodial parent of" the children, see Appellant's Br. at 10, is simply a request to reweigh the evidence and the credibility of the witnesses. The evidence before us leads to the conclusion that both parties love their children and are capable of taking care of their daily needs.

However, the children are young and Mother has been their primary caretaker. Her work schedule is stable and she can provide more consistency for the children. Husband's failure to contact the children during the parties' numerous and lengthy separations, and his unilateral removal of the children from Mother's care while M.L. was still breast feeding does not reflect well on him. Husband's actions, and the parties' disagreements concerning medical issues and schools, certainly support the trial court's conclusion that joint custody is not in the children's best interests.

Husband has shown that he is not willing to compromise or cooperate with Wife. And instead of providing stability for the children, he has caused significant disruptions in their young lives by removing himself from their lives for extended periods of time, by evicting Wife and the children from the marital home and making them leave without time to pack most of their belongings, and by removing them from their mother for two weeks without her consent. For all of these reasons, we conclude that the trial court acted within its discretion when it awarded custody of the children to Wife because the evidence supports the trial court's conclusion that the custody order is in the children's best interests.

## II. The Custody Evaluation Fee

Husband was provisionally ordered to pay the expense of the custody evaluation, which Husband requested. Wife objected to Husband's request for a custody evaluation. The trial court reserved the right to apportion the payment of the fees differently at the final hearing. After the final hearing, the trial court ordered Wife to reimburse Husband

for "the lesser of one-half of said fees or $1,355.00."[1]  Appellant's App. p. 17.  Husband argues that the trial court should have ordered Wife to reimburse Husband for the full amount of the fee because Wife lied to Dr. Lombard, which "renders his custody evaluation flawed and unreliable."  Appellant's Br. at 12.

Indiana Code Section 31-15-10-1 provides that a trial court can order one spouse to pay a reasonable amount for the cost the other spouse incurs maintaining or defending proceedings related to dissolution. We apply the abuse of discretion standard in reviewing such an award.  Mitchell v. Mitchell, 875 N.E.2d 320, 325 (Ind. Ct. App. 2007), trans. denied.  "When awarding attorney fees [or costs], the trial court must consider the resources of the parties, their economic conditions, the ability of the parties to engage in gainful employment, to earn adequate income, and other factors that are pertinent to the reasonableness of the award."  Kondamuri v. Kondamuri, 852 N.E.2d 939, 953 (Ind. Ct. App. 2006) (quotation omitted).  A trial court "enjoys broad discretion in assessing attorney fees [and costs] in dissolution cases."  Goodman v. Goodman, 754 N.E.2d 595, 602 (Ind. Ct. App. 2001).  The court may also consider whether a party has committed misconduct that results in additional litigation expenses.  Mitchell, 875 N.E.2d at 325.

First, we observe that the additional expense of the custody evaluation did not arise from any misconduct on Wife's part, but from Husband's request for the evaluation.

---

[1] To equalize the division of the marital assets, Husband was ordered to pay $1,355.00 to Wife.  Therefore, after ordering Wife to pay the lesser amount of one-half of Dr. Lombard's fees or $1,355.00, the court ordered that "payment of said fee shall be made by application of a credit against the equalization and adjustment payment" ordered to address the disparity in the value of the assets awarded to each party.  Id.

Also, neither party argues that they are financially unable to equally bear the cost of the custody evaluation.

Husband's sole allegation is that Dr. Lombard's report was essentially worthless to the trial court's custody determination because Wife lied to the custody evaluator. Specifically, Husband challenges Wife's statement to Dr. Lombard concerning her inability to understand Husband's coded work schedule, her statements concerning two incidents involving domestic violence between the parties, and her statement that Husband abuses alcohol. Except for the statement concerning alcohol abuse, Dr. Lombard, and ultimately the trial court, were responsible for weighing the credibility of Wife's statements against Husband's version of those events and circumstances.

Wife did admit at the dissolution hearing that it was "probably not" true that Husband abuses alcohol and that she told Dr. Lombard that he did because of the quantity of alcohol stored in Husband's residence. Husband told Dr. Lombard that he did not drink often. Husband was administered the Substance Abuse Subtle Screening Inventory and "his profile did not indicate high risk for substance dependence issues[.]" Appellant's App. p. 31. Dr. Lombard considered all of this information in making his custody evaluation. In concluding that Wife should be the children's primary custodial parent, Dr. Lombard did not reference Wife's allegation that Husband abuses alcohol. We may therefore reasonably conclude that Dr. Lombard did not consider Wife's false allegation of alcohol abuse in rendering his evaluation.

For these reasons, we cannot conclude that Wife's misconduct resulted in additional litigation expenses or caused Dr. Lombard's evaluation to be flawed and

unreliable.  And therefore, the trial court acted within its broad discretion when it ordered Husband and Wife to share the cost of the custody evaluation.

## Conclusion

The trial court acted within its discretion in awarding Wife primary custody of the parties' children and Husband's argument to the contrary is simply a request to reweigh the evidence.  The trial court also acted within its broad discretion when it ordered Husband and Wife to share the cost of the custody evaluation.

Affirmed.

ROBB, C.J., and BAILEY, J., concur.