**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TERRY A. WHITE**
Olsen & White, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DOUGLAS W. ZEHNER, )
)
    Appellant-Petitioner, )
)
        vs. )     No. 87A01-1401-DR-44
)
PAMELA S. ZEHNER, )
)
    Appellee-Respondent. )

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Sheila M. Corcoran, Special Judge
Cause No. 87D02-1302-DR-172

**October 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Douglas Zehner filed a petition to dissolve his marriage to Pamela Zehner. He appeals the trial court's award of spousal maintenance and award of attorney's fees to Pamela. We affirm.

## ISSUES

Douglas raises two issues, which we restate as:

I.    Whether the trial court erred by ordering Douglas to pay spousal maintenance.

II.   Whether the trial court erred by ordering Douglas to pay $750 of Pamela's attorney's fees.

## FACTS AND PROCEDURAL HISTORY

Douglas and Pamela married in 2008. No children were born during their relationship. Their marriage was tumultuous, and they separated several times. Douglas filed for divorce two times but withdrew both petitions.

The parties separated for the last time in January 2013. Douglas filed a third petition for divorce in February 2013, beginning this case. In April 2013, the parties told the trial court they had reached a tentative agreement requiring Douglas to pay temporary spousal maintenance to Pamela. Appellant's App. pp. 37, 39. The parties did not submit a proposed provisional order to the court for approval, and the court did not order Douglas to provide temporary maintenance. Despite the absence of an order, Douglas began paying maintenance to Pamela.

In July 2013, Douglas asked the court to end any temporary maintenance obligation and ceased making payments. Pamela filed a motion to have Douglas held in

2

contempt. In September 2013, the court held oral argument and found Douglas in contempt for failure to pay temporary maintenance. The court ordered Douglas to pay $2,400 in past due maintenance and $750 in attorney's fees.

Douglas paid the arrearage, but not the attorney's fees. Next, he filed a motion to correct error, asserting that the parties' agreement had never been formalized in a provisional order. He did not resume the maintenance payments after paying the arrearage. *Id.* at 56. As a result, Pamela filed another motion for contempt.

The court held an evidentiary hearing on October 21, 2013. On December 27, 2013, the court issued a judgment dissolving the marriage. The court awarded the marital home, a separate undeveloped lot, and all three of the parties' vehicles to Douglas. The court further divided the parties' personal property and ordered Douglas to pay Pamela $6,148 to equalize the property distribution. The court concluded:

> The Court finds that the Wife is disabled and unable to be gainfully employed. The Husband shall pay to the Wife maintenance in the sum of $200 each week until she is able to be gainfully employed. The Wife shall verify annually no later than January 31 that she still receives Social Security disability benefits, her treating physician's written opinion that she remains unable to work and earned income for the prior year. The Husband shall provide health insurance for the Wife through a COBRA plan until the Wife is enrolled in the Medicaid program.
>
> The Husband shall pay the balance of the Wife's attorney fees in the amount of $3,655 in monthly installments of $400 to Bob Zoss law firm until paid in full.
>
> The Husband is not found in contempt of court.

*Id.* at 9. In a January 16, 2014 order, the trial court resolved Douglas' motion to correct error, as follows:

> The Court, upon review of its prior order that the Husband pay $750 attorney fees to Wife's attorney, now affirms that order. Although the Court found the Husband not in contempt of court because the agreed provisional order was never reduced to writing and filed with the Court, the Husband had stopped making maintenance payments to the Wife, whether that amount was $200 or $250 per week, requiring her to file an information for contempt of court in order to continue to receive maintenance during the pendency. Husband shall pay the attorney's fees to Wife's attorney within 60 days of today's date.

*Id.* at 10. This appeal followed.

## DISCUSSION AND DECISION

Pamela did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments. *K.L. v. E.H.*, 6 N.E.3d 1021, 1029 (Ind. Ct. App. 2014). Instead, we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error. *Id.* Prima facie error is defined in this context as "at first sight, on first appearance, or on the face of it." *Id.* (quoting *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006)).

## I. SPOUSAL MAINTENANCE

Douglas argues the trial court erred in ordering him to pay spousal maintenance, claiming the court failed to issue a required finding and there is no evidence to support the award.

The General Assembly has authorized trial courts to award spousal maintenance. Ind. Code § 31-15-7-1 (1997). The court's power to award spousal maintenance is wholly within its discretion. *Spivey v. Topper*, 876 N.E.2d 781, 784 (Ind. Ct. App. 2007). The presumption that the court correctly applied the law in making an award of spousal

4

maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal. *Id.*

When awarding maintenance, the court must make a finding required by Indiana Code section 31-15-7-2 (1997). *See* Ind. Code § 31-15-7-1. Indiana Code section 31-15-7-2 provides, in relevant part:

> If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected, the court may find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court.[1]

In this case, the final judgment provides: "The Court finds that the wife is disabled and unable to be gainfully employed." Appellant's App. p. 9. Thus, the trial court issued the finding required by Indiana Code section 31-15-7-2 that Pamela's ability to support herself has been materially affected.

The next question is whether the evidence supports the court's finding that Pamela is unable to support herself due to her medical conditions. When we consider whether the evidence supports a court's finding, we do not reweigh the evidence and consider only the evidence favorable to the court's judgment. *Nikolayev v. Nikolayev*, 985 N.E.2d 29, 33 (Ind. Ct. App. 2013), *trans. denied*.

The essential inquiry is whether the incapacitated spouse has the ability to support himself or herself. *McCormick v. McCormick*, 780 N.E.2d 1220, 1224 (Ind. Ct. App. 2003). The trial court may consider factors including the financial resources of the party

---

[1] The statute also provides for caregiver maintenance and rehabilitative maintenance, but neither of those circumstances are present here.

seeking maintenance, the standard of living established in the marriage, the duration of the marriage, and the ability of the spouse from whom the maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. *Farthing v. Farthing*, 178 Ind. App. 336, 341, 382 N.E.2d 941, 945 (1978).

Pamela's medical records were admitted into evidence.[2] They discuss doctor's office visits and laboratory tests from October 2008 through April 2013. Pamela has been diagnosed with fibromyalgia and chronic fatigue syndrome, among other conditions. She first experienced fibromyalgia-derived pain in 2006, before the parties' marriage. Douglas was aware of the fibromyalgia diagnosis before the marriage. Tr. p. 264.

Dr. Clovis Manley became Pamela's primary care physician in June 2009. From 2009 through 2012, Pamela visited his office every month, and sometimes more often, due to fibromyalgia. Dr. Manley prescribed many different medicines to treat her fibromyalgia, as many as five or six at a time. In addition, during the monthly appointments he frequently adjusted the dosages as needed to address her symptoms or switched medications when they failed to provide relief or had intolerable side effects. Dr. Manley also required Pamela to have lab work done as often as three or four times per year to monitor her conditions and the effects of her medications.

---

[2] Douglas objected to Pamela's medical records, claiming he had not been given an opportunity to review them. The trial court entered the records into evidence but granted Douglas one week to review them and file a formal objection. If Douglas objected, the court indicated that it would reopen the case and receive further evidence on the subject. Douglas did not file an objection to the evidence.

Douglas did not refer to the medical records in his Appellant's Brief. We remind Douglas that the Appellant's Brief must state the facts in accordance with the standard of review. Ind. Appellate Rule 46(A)(6)(a).

The medical records and Pamela's testimony establish that she has repeatedly experienced severe, debilitating pain due to fibromyalgia. Pamela's symptoms continued to worsen as of the day of the evidentiary hearing, and on that day she was taking six different prescribed medications for fibromyalgia. She further reported "widespread pain" throughout her body, migraines "two to three" times per week, and the loss of use of her left hand. *Id.* at 276. In June 2009, she was detained for seventy-two hours for severe mental distress caused by fibromyalgia-derived pain. She was detained again for seventy-two hours in 2011 because one of her medications caused severe mental distress as a side effect.

Pamela also developed depression, anxiety, and insomnia as a result of suffering from fibromyalgia. Dr. Manley prescribed a variety of medicines to address these conditions, and she has sought therapy.

These extensive medical conditions sharply limit Pamela's ability to support herself. She receives social security disability payments, which began in 2010. In May 2009, one of her doctors determined she could not work outside the home and would be limited to working four to six hours per day, no more than thirty hours per week, if she worked from home. In 2010, another doctor said she could work outside the home no more than twenty hours per week. In 2011, Dr. Manley limited her to working no more than twenty hours per week, with restrictions of twenty to thirty pounds on lifting and carrying, and no prolonged standing. In January 2013, Pamela reported to Dr. Manley that her fibromyalgia medications were helping to treat the symptoms, but she still felt unable to work.

7

Fibromyalgia has caused Pamela to have "difficulties with cognitive retention, learning, reading sometimes, [and] memory loss." *Id.* at 218. Pamela has attempted to find work despite her conditions, but the record demonstrates that she has been entirely unsuccessful. Early in the marriage, she took a job as a sales clerk at a consignment shop but was physically unable to do the work. She also took a job that allowed her to work from home, but her cognitive symptoms made such work impossible. *Id.* Further, in 2013 Pamela applied at several retail stores, but they had no openings for someone with her limitations. She considered babysitting, but she believed she would be physically unable to care for a child older than an infant. She admitted that her migraines and pain flare-ups would limit her ability to serve as a babysitter. This evidence is sufficient to establish that she is unable to support herself and has limited assets.

Douglas asserts that Pamela receives disability payments, has a retirement account, and received money from the division of marital assets. Pamela testified at the hearing that her living expenses consume her disability payments, and she had only $200 in her checking account on that day. Further, during the year prior to the evidentiary hearing, Pamela sold "a great deal" of her personal property for cash, but she had "run out of things to sell." *Id.* at 229, 243. Despite her disability payments, she lived in her car during a portion of the dissolution action.

Douglas also claims that spousal maintenance is inappropriate because the marriage was of relatively short duration and they frequently lived apart. However, Douglas was aware of Pamela's fibromyalgia diagnosis when they married. *Id.* at 264. Further, she was unable to work on a consistent basis throughout their marriage and was

8

dependent upon his income as a pharmacist, which at the time of the evidentiary hearing was $2,800 every two weeks. The trial court could reasonably conclude that the relatively short duration of the marriage was outweighed by Pamela's severe medical conditions, her resulting inability to work, her dependence upon Douglas for income during the marriage, and the fact that he can meet his own financial needs while paying maintenance to Pamela. Douglas has failed to establish prima facie error in the trial court's award of maintenance.

## II. ATTORNEY'S FEES

Douglas argues that the trial court erred in ordering him to pay $750 in attorney's fees in relation to the parties' dispute over temporary maintenance.[3] He notes that he was not in contempt of court, so he concludes the attorney's fee award was unjustified.

The governing statute, Indiana Code section 31-15-10-1 (1997), provides in relevant part:

> The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

The legislature has thus deemed it appropriate that a party, who otherwise could not afford an attorney in connection with dissolution proceedings, have access to an attorney's services by providing that the other party is responsible for paying the attorney fees. *Beeson v. Christian*, 594 N.E.2d 441, 443 (Ind. 1992).

---

[3] He is not challenging the trial court's attorney's fee award of $3,655 in the decree of dissolution of marriage.

9

The plain language of Indiana Code section 31-15-10-1 does not require a finding of contempt as a condition precedent to an award of attorney's fees. Instead, a court should consider the spouses' resources, economic condition, ability to earn income, the responsibility of the spouses in incurring the fees, and other similar factors that would bear on the reasonableness of the award. *Mitchell v. Mitchell*, 875 N.E.2d 320, 325 (Ind. Ct. App. 2007), *trans. denied*.

The trial court never issued a provisional order establishing temporary maintenance, so the court correctly noted that Douglas did not commit contempt by ending his temporary maintenance payments. Nevertheless, the $750 award was justifiable under the circumstances of this case. By the time the trial court reaffirmed the award in its January 16, 2014 order, it had been provided with evidence that at the time Pamela requested temporary maintenance, she had been in poor financial condition. She had lived in her car for a portion of the dissolution proceedings and was unable to work due to her medical conditions. Even after Pamela obtained an apartment, living expenses consumed most of her disability payments. By contrast, Douglas's earnings were unaffected by the dissolution case and far surpassed Pamela's income.

In addition, when Pamela sent Douglas a proposed provisional order reflecting their agreement that he would pay temporary maintenance, Douglas rejected its terms and did not file it. Thus, even though Douglas made some temporary spousal maintenance payments per their tentative agreement, Pamela was required to return to court to resolve their dispute and obtain relief from her financial circumstances. Douglas has failed to demonstrate prima facie error arising from the trial court's award of $750 for attorney's

fees. *See id.* (affirming attorney fee award to Wife because Wife's counsel had to prepare a domestic relations order after Husband's counsel was ordered to prepare the order but failed to do so).

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

VAIDIK, C.J., and KIRSCH, J., concur.