**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 19 2014, 10:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ANDREA L. CIOBANU**
**ALEX BEEMAN**
Ciobanu Law, P.C.
Indianapolis, Indiana

APPELLEE PRO SE:

**D.N.**
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF T.T.: | ) | |
| | ) | |
| L.H., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1404-DR-270 |
| | ) | |
| L.T., and D.N., | ) | |
| | ) | |
| Appellee-Respondents. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John F. Hanley, Judge
The Honorable Christopher B. Haile, Magistrate
Cause No. 49D11-0510-DR-41507

**December 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

The maternal grandmother of T.T., L.H. ("Grandmother"), appeals the trial court's order granting the petition to modify custody of T.T. filed by D.N. ("Father"). Grandmother raises two issues which we consolidate and restate as whether the trial court abused its discretion in taking under advisement its decision on whether to interview T.T. *in camera* until after the close of evidence and in denying Grandmother's request for an *in camera* interview with T.T. We affirm.

FACTS AND PROCEDURAL HISTORY

Grandmother cared for T.T. during the first part of his life and obtained custody.[1] In 2007, the court ordered that Grandmother have physical custody of T.T., that Grandmother and Father have joint legal custody, and that Father have parenting time. On June 13, 2013, Father filed a verified petition for modification of custody and emergency hearing. Father alleged that Grandmother was in the hospital due to a recurring and possibly serious illness, that T.T.'s mother ("Mother") and Mother's boyfriend moved into Grandmother's home, that Mother had not been actively involved in parenting T.T., and that Mother had been incarcerated for dealing cocaine at some point and was convicted of criminal charges in Tennessee as recently as February 2013.

On March 26, 2014, the court held a hearing on Father's motion. At the beginning of the hearing, Grandmother's counsel indicated that T.T. was fourteen years old and stated that T.T. wished to be heard "so, we are requesting that the Court interview him in chambers." Transcript at 5. The court stated: "Well, my policy on in camera interviews is to wait until I've heard the evidence and make a determination about whether I think

---

[1] The record does not contain a copy of the initial custody order.

it's important or not." Id. Grandmother's counsel responded by saying "[o]kay." Id. The court asked whether the parties wanted to stipulate as to what T.T.'s wishes were, and Grandmother's counsel stated: "we would say that he wishes to stay with his grandmother, stay in her custody, and, and not have modification of custody . . . ." Id. at 5-6. Father's counsel stated that that may have been stated in the report by the Domestic Relations Counseling Bureau ("DRCB"). The court asked "obviously, that didn't sway the DRCB regarding the recommendation," and Father's counsel stated "it did not, as far as I know." Id. at 6. Father's counsel asked the court to take judicial notice of the DRCB report that was ordered and completed, and the court stated: "So noted." Id. at 8.

Father's fiancée testified regarding Father's relationship with her daughter and T.T.'s relationship with her daughter. Father testified that Grandmother went to the hospital three or four times within the past six to eight months, that the last time was for ten days, and that no one called him at any time to tell him. Father testified regarding his concern with certain individuals who smoke marijuana at Grandmother's house. Father also testified regarding his education and the fact that he was employed. Grandmother testified that she wished T.T. would remain in her custody and she knew that T.T. agreed with her wish. She testified that she was in the hospital for seven days. She also testified that none of her children graduated from school and that she had been given custody of her son's daughter who was currently seventeen years old, pregnant, and "on the run." Id. at 100.

After the parties rested, the court stated:

Alright, Court is going to take this under advisement. I'm going to review the record and my notes. If I determine that it's, uh, necessary and helpful

3

to talk with [T.T.] then I will contact, we will contact, um, counsel, to make arrangements to have him brought in for an interview to be done, alright?

Id. at 123. Grandmother did not object.

On April 1, 2014, the court entered an order granting Father's petition for modification of custody. The order indicated that the DRCB recommended that custody be modified and the court agreed with the recommendations of the DRCB. The court ordered that Father have sole custody of T.T. and that Grandmother have parenting time with T.T. on alternate weekends.

DISCUSSION

The issue is whether the trial court abused its discretion in taking under advisement its decision on whether to interview T.T. *in camera* until after the close of evidence, and in denying Grandmother's request for an *in camera* interview. Grandmother argues that the court abused its discretion because it should have inquired as to the basis or reason why T.T. wished to remain in her custody. Grandmother argues that the trial court's decision to take her request under advisement until the close of the evidence "effectively denied [her] the ability to compel a witness on her behalf." Appellant's Brief at 11. She asserts that it should not be left to one party to place a child in the middle of an adversarial custody battle and that "[o]ne can also infer that had [Grandmother] attempted to call [T.T.] as a witness, the trial court would have summarily denied the request in light of its decision on the *in camera* interview of [T.T.]." Id. She also contends that the trial court's errors were not harmless because they effectively denied T.T. from being heard and denied her the ability to present evidence.

4

Father, *pro se*, argues that Grandmother waived her challenge to the denial of her request for an *in camera* interview because she presents her argument in a perfunctory form. He contends that this court should dismiss the appeal because it is frivolous, wholly without merit, and brought in bad faith, and that sanctions should be imposed. He also asserts that the trial court acted entirely within in its discretion in denying Grandmother's request for an *in camera* interview.

In her reply brief, Grandmother contests Father's assertions and argues that "[s]anctions presupposes [sic] one incurred *attorney's fees* in a matter" and that Father "has allegedly filed his brief *pro se* and represented to this Court the same, though there is all the indications that the brief was written by a ghost" given the "substantially perfect Blue Book citation and [Father's] request for sanctions." Appellant's Reply Brief at 8.

With respect to Father's argument that we dismiss the case or impose sanctions, we observe that Ind. Appellate Rule 46(A)(8)(a), which is cited by Father, provides: "The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22." We also observe that Ind. Appellate Rule 66(E) provides that "[t]he Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees."

While Ind. Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. Thacker

5

v. Wentzel, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003) (citing Tioga Pines Living Ctr., Inc. v. Ind. Family & Soc. Serv. Admin., 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), aff'd on reh'g, trans. denied). A strong showing is required to justify an award of appellate damages and the sanction is not imposed to punish mere lack of merit but something more egregious. Harness v. Schmitt, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010). Grandmother's brief contains cogent reasoning and citations to authority. We decline to dismiss the appeal or impose sanctions. Accordingly, we turn to the merits of Grandmother's arguments.

Indiana Code § 31-17-2-9(a) provides that when making a decision concerning child custody, a trial court "*may* interview the child in chambers to ascertain the child's wishes." (Emphasis added). Additionally, Indiana Code § 31-17-2-8(3) states that, when making a child custody determination, the trial court "shall consider . . . [t]he wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age."

We have noted that, under Indiana Code § 31-17-2-9, "the decision concerning whether to conduct an in camera interview is within the trial court's discretion." Cunningham v. Cunningham, 787 N.E.2d 930, 937 (Ind. Ct. App. 2003). To the extent the trial court's refusal to interview T.T. *in camera* was similar to an exclusion of evidence, the admission of evidence is entrusted to the sound discretion of the court. K.L. v. E.H., 6 N.E.3d 1021, 1030 (Ind. Ct. App. 2014). We will find an abuse of discretion only where the court's decision is against the logic and effect of the facts and

6

circumstances before the court. Id. We will reverse only if the error is inconsistent with substantial justice or if a substantial right of the party is affected. Id.

The record reveals that Grandmother's counsel stated that T.T. wished to stay with Grandmother. Grandmother testified that she wished T.T. would remain in her custody and that she knew that T.T. agreed with her wish. While the record does not contain a copy of the DRCB report, the record suggests that the report includes statements indicating T.T.'s desire to remain with Grandmother, and the court took judicial notice of the report. Thus, the trial court had before it argument and evidence that T.T. wished to remain with Grandmother. We also note that Grandmother did not object to the trial court's statement at the beginning of the hearing that the court was going to wait until it heard the evidence before making a determination on Grandmother's request for an *in camera* interview. And she did not object at the end of the hearing when the court stated that it would take the matter under advisement. Grandmother also made no attempt to call T.T. to testify as a witness, as she could have done, if she truly wished T.T. to be heard by the trial court. See White v. White, 655 N.E.2d 523, 528-529 (Ind. Ct. App. 1995) (holding that option to conduct *in camera* interview of child pursuant to statute did not permit trial court to disallow in-court testimony of competent child). Under the circumstances, we cannot say that the denial of Grandmother's request for an *in camera* interview or the fact that the court took the matter under advisement requires reversal of the trial court's order.

7

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting Father's petition to modify custody.

Affirmed.

BAILEY, J., concurs.

ROBB, J., concurs in result without separate opinion.